## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF FLORIDA
## DIVISION

| | | |
|---|---|---|
| RB JAI ALAI, LLC; RICHARD BIRDOFF; AND DAVID P. CATINA | ) ) ) | |
| *Plaintiffs*, | ) ) | |
| vs. | ) ) ) | 6:13-CV-1167-orl-PGB-GJK |
| FLORIDA DEPARTMENT OF TRANSPORTATION; ANANTH PRASAD, IN HIS OFFICIAL CAPACITY AS SECRETARY OF FLORIDA DEPARTMENT OF TRANSPORTATION; FEDERAL HIGHWAY ADMINISTRATION; AND JAMES CHRISTIAN IN HIS OFFICIAL CAPACITY AS DIVISION ADMINISTRATOR OF THE FEDERAL HIGHWAY ADMINISTRATION, | ) ) ) ) ) ) ) ) ) | |
| *Defendants*. | ) ) | |

### PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR A PRELIMINARY INJUNCTION

| | | |
|---|---|---|
| MARK A. CHERTOK | MICHAEL D. JONES | J. MARC JONES |
| JONATHAN KALMUSS-KATZ | Florida Bar # 137608 | Florida Bar # 69182 |
| *Admitted Pro Hac Vice* | Michael D. Jones & Assoc. | J. Marc Jones, P.A. |
| Sive, Paget & Riesel, P.C. | 361 S. Central Ave. | 361 S. Central Ave. |
| 460 Park Ave.,10th Floor | Oviedo, FL 32765 | Ovideo, FL 32765 |
| New York, NY 10022 | Tel: (407) 359-9914 | Tel: (407) 359-9900 |
| Tel: (212) 421-2150 | Fax: (407) 359-9934 | Fax: (407) 359-9934 |
| Fax: (212) 421-1891 | mdj124@embarqmail.com | marc@jmarcjonespa.com |
| mchertok@sprlaw.com | Trial Co-Counsel | Trial Co-Counsel |
| jkkatz@sprlaw.com | | |

*Attorneys for Plaintiffs*

# Table of Contents

Preliminary Statement..................................................................................................1

Point I: The O'Dea Affidavit's "Post-Hoc Rationalizations" Cannot Support The Administrative Determinations Reached Several Years Earlier..........................................2

Point II:  The O'Dea Affidavit and the FDOT's Opposition Brief Do Not Defeat Plaintiffs' Motion for a Preliminary Injunction ................................................................3

    A.  FDOT Fails to Rebut Plaintiffs' Showing of Irreparable Harm ..............................4

    B.  Plaintiffs' Claims are Timely and Cognizable Under NEPA and FAHA................6

    C.  The Harm to Plaintiffs Outweighs the Costs Asserted by FDOT...........................8

Conclusion ...................................................................................................................10

**Table of Authorities**

**CASES**                                                                                                                                **PAGE**

Am. Textile Mfr. Inst. v. Donovan,
452 U.S. 490 (1981)...............................................................................................................3

Amoco Prod. v. Vill. of Gambell,
480 U.S. 531 (1987)...............................................................................................................9

Bar MK Ranches v. Yuetter,
994 F.2d 735 (10th Cir. 1993) ...............................................................................................5

Breckinridge v. Rumsfeld,
537 F.2d 864 (6th Cir. 1976)………………………………………………………………….8

Citizens to Pres. Overton Park v. Volpe,
401 U.S. 402 (1971)................................................................................................................3

City of Davis v. Coleman,
521 F.2d 661 (9th Cir. 1975) .................................................................................................8

Comm. to Save the Rio Hondo v. Lucero,
102 F.3d 445 (10th Cir. 1996) ...............................................................................................7

Churchill Truck Lines v. United States,
533 F.2d 411 (8th Cir.1976) ..................................................................................................7

Citizens for Better Forestry v. U.S. Dep't of Agric.,
341 F.3d 961 (9th Cir. 2003) .................................................................................................7

Cnty. of Suffolk v. Sec'y of Interior,
562 F. 2d 1368 (2d Cir. 1977)................................................................................................4

Druid Hills Civic Ass'n v. Fed. Highway Admin.,
772 F.2d 700 (11th Cir. 1985) ...............................................................................................4

Fed. for Am. Immigration Reform v. Meese,
643 F. Supp. 983 (S.D. Fl. 1986)………………………………………………………………..8

Highway J Citizens Grp. v. U.S. Dep't of Transp.,
656 F. Supp. 2d 868 (E.D. Wis. 2009) ..................................................................................4

Klein v. U.S. Dep't of Energy,
753 F.3d 576 (6th Cir. 2014) ...................................................................................................... 7

Metro. Edison Co. v. People Against Nuclear Energy,
460 U.S. 766 (1983) .................................................................................................................... 7

Ocean Conservancy v. Evans,
260 F. Supp. 2d 1162 (M.D. Fla. 2003) ..................................................................................... 3

Ouachita Watch League v. Jacobs,
463 F.3d 1163 (11th Cir. 2006) ................................................................................................. 6

Protect Key W., Inc. v. Cheney,
795 F. Supp. 1552 (S.D. Fl. 1992) ............................................................................................. 3

San Luis & Delta-Mendota Water Auth. v. Jewell,
747 F.3d 581 (9th Cir. 2014) ..................................................................................................... 3

Saint Paul Branch of NAACP v. U.S. Dep't of Transp.,
764 F.Supp.2d 1092, 1112 (D. Minn. 2011) ............................................................................. 8

Sierra Club v. Bosworth,
510 F.3d 1016 (9th Cir. 2007) ................................................................................................... 3

Sierra Club v. U.S. Army Corps of Eng'rs,
446 F.3d 808 (8th Cir. 2006) ..................................................................................................... 7

Taubman Realty Grp. v. Mineta,
198 F. Supp. 2d 744 (E.D. Va. 2002) .................................................................................... 7, 8

Wilderness Watch & Pub. Emp. for Envtl. Responsibility v. Mainella,
375 F.3d 1085 (11th Cir. 2004) ................................................................................................. 3

**STATUTES**

23 U.S.C. § 109(h) ........................................................................................................................ 8

23 U.S.C. § 128(a) .................................................................................................................... 6, 8

## Preliminary Statement[1]

In response to Plaintiffs' Motion for a Preliminary Injunction (the "Motion"), Federal Defendants submit no opposition, and State Defendants ("FDOT") do not dispute the following dispositive facts.  First, FDOT proposed a Flyover that it claimed would "demuck" local wetlands, disturb suspected contamination, and bypass the corridor where Plaintiffs work and own property.  Between 2003 and 2004, FDOT pledged to conduct additional analyses of the Flyover's impacts on contaminated sites and wetlands.  Finally, while Defendants re-evaluated the Flyover in March 2012 and declared that it would not pose any potentially significant environmental impacts, the Administrative Record contains not a scintilla of evidence that Defendants ever studied the consequences of wetland demucking, performed the follow-up studies they had promised, or considered recent land use plans that voice specific concerns about the Flyover's "negative impacts" on the bypassed community.

The Affidavit of Frank J. O'Dea, filed in opposition to Plaintiffs' Motion, proves rather than undercuts Plaintiffs' case.  O'Dea asserts that the FDOT was still investigating contaminated sites surrounding the Flyover in late 2012 and remediating that contamination though early 2014, leaving Defendants incapable of taking the required "hard look" at such impacts in March 2012.  Under black letter administrative law, the 2012 Reevaluation must stand or fall on the record that was before Defendants at the time of that determination, not on FDOT's post-hoc rationalizations offered for the first time several years later.

The O'Dea Affidavit should therefore not be considered in reviewing Plaintiffs' claims, but even if it is FDOT's opposition does not defeat Plaintiffs' entitlement to a preliminary

---

[1] Unless otherwise defined, capitalized terms shall have the meaning previously ascribed to them in Plaintiff's Motion for a Preliminary Injunction and Consolidated Memorandum of Law ("P.I. Br.") (Doc. No. 72.).

1

injunction. The Administrative Record and regional land use plans belie O'Dea's bald assertions that the Flyover will not harm Plaintiffs, and FDOT's alternative argument that Plaintiffs' injuries are not cognizable under NEPA or FAHA misstates the governing law.

Finally, FDOT's claim that any harm to Plaintiffs is outweighed by "project delay and modification costs" misrepresents the relief sought in this Motion. Plaintiffs have not asked the Court to halt all construction, but rather to temporarily enjoin the Flyover component of the Project while the Court considers Plaintiffs' request for additional NEPA and FAHA review. On remand, should such review result in the replacement of the Flyover with an at-grade alternative, the savings to Defendants and the public would vastly outweigh the costs asserted by FDOT. A preliminary injunction is required to preserve the option, however, and to prevent Defendants from substantially completing the Flyover before the Court has an opportunity to determine whether such construction is lawful.

### Point I:  The O'Dea Affidavit's "Post-Hoc Rationalizations" Cannot Support The Administrative Determinations Reached Several Years Earlier

In the O'Dea Affidavit, FDOT attempts to supplement a deficient record with conclusory assertions relating to studies that were not – and could not have been – considered by Defendants in the decisions challenged herein. Without any underlying reports or data, O'Dea asserts that FDOT investigated contaminated sites impacted by the Flyover "between July and December 2012" and remediated one site in "2013 and early 2014." (O'Dea Aff. ¶ 10) (Doc. No. 76-1.) Before beginning those alleged investigations, however, Defendants had already predetermined the result, declaring in March 2012 that the Flyover would not pose any potential for significant impacts relating to the disturbance of contamination. (Doc. No 45-53, AR0624.)

In evaluating the sufficiency of that Reevaluation, "the focal point for judicial review

2

should be the administrative record that was before the agency <u>at the time of the decision</u>, not some new record made initially in the reviewing court."[2]  A contrary rule would undermine the central purpose of NEPA, which "imposes procedural requirements <u>before</u> decisions are made in order to ensure that those decisions take environmental consequences into account."[3] "[I]f the reviewing court cannot find substantial evidence [supporting the agency's decision] in the record, it should 'not compensate for the agency's dereliction by undertaking its own inquiry into the merits,' but should remand to the agency for further proceedings ...."[4]

Federal Defendants filed the Administrative Record, and certified it as complete, on January 23, 2014. (Doc. No. 45.)  Materials outside that Record may only be considered in limited circumstances, none of which apply to the O'Dea Affidavit.  The O'Dea Affidavit does not describe the thought processes of Defendants at the time of the challenged determination, but rather purports to describe investigations conducted long after the 2012 Reevaluation.[5]  Nor does it highlight relevant impacts or mandatory considerations that "the agency may have ignored," as the Birdoff and Catina Affidavits do.[6]  Instead, the O'Dea Affidavit is a "post hoc rationalization" for a predetermined agency action, the use of which has been rejected by the Supreme Court and should not be accepted in this proceeding.[7]

### Point II:  The O'Dea Affidavit and FDOT's Opposition Brief Do Not Defeat Plaintiffs' Motion for a Preliminary Injunction

---

[2] <u>Ocean Conservancy v. Evans</u>, 260 F. Supp. 2d 1162, 1167-68 (M.D. Fla. 2003) (emphasis added).
[3] <u>Wilderness Watch & Pub. Emp. for  Envtl. Responsibility v. Mainella</u>, 375 F.3d 1085, 1096 (11th Cir. 2004) (emphasis in original); <u>Sierra Club v. Bosworth</u>, 510 F.3d 1016, 1026 (9th Cir. 2007).
[4] <u>San Luis & Delta-Mendota Water Auth. v. Jewell</u>, 747 F.3d 581, 603 (9th Cir. 2014) (citing <u>INS v. Ventura</u>, 537 U.S. 12, 16 (2002)).
[5] <u>Cf.</u> <u>Citizens to Preserve Overton Park v. Volpe</u> 401 U.S. 402, 420-21 (1971).
[6] <u>Cty. of Suffolk v. Sec'y of the Interior</u>, 562 F. 2d 1368, 1384-85 (2d Cir. 1977).
[7] <u>Seee</u> <u>Am. Textile Mfs. Inst. v. Donovan</u>, 452 U.S. 490, 539 (1981) ("[T]he post hoc rationalizations of the agency or the parties to this litigation cannot serve as a sufficient predicate for agency action"); <u>Protect Key W., Inc. v. Cheney</u>, 795 F. Supp. 1552, 1562 (S.D. Fl. 1992) ("In the NEPA context, <u>post hoc</u> compliance <u>by definition</u> does not accord with the congressional mandate.") (emphasis in original)

FDOT's opposition brief and the O'Dea Affidavit (to the extent it is considered) consist of conclusory assertions and misstatements of law that cannot defeat – and in many instances support – Plaintiffs' Motion for a Preliminary Injunction.

### A. FDOT Fails to Rebut Plaintiffs' Showing of Irreparable Harm

FDOT spends much of its opposition arguing that Plaintiffs will not be harmed by the construction of the Flyover less than 500 feet from the Site where they own property and work.

Plaintiffs Birdoff and Catina regularly view and enjoy the wetlands surrounding the Flyover, an aesthetic interest sufficient to confer standing under NEPA.[8]  FDOT nonetheless argues that Plaintiffs will not be harmed because "the O'Dea Affidavit and Administrative Record show that the Project will not impact wetlands." (St. Opp. Br. at 8) (Doc. No. 76). Although those documents repeatedly profess that the Project will not impact wetlands, they contain no factual support for those claims, and the Wetland Analysis Report that Defendants purportedly relied upon is notably absent from the Administrative Record.[9] Without "the predicate facts on which to make a reasoned judgment," Plaintiff's unsupported assertions cannot satisfy NEPA's hard look requirement.[10]

FDOT's blanket denial of wetland impacts is also belied by its admission that "demucking is anticipated at most of the wetland sites" surrounding the Flyover (Doc. No. 45-44, AR0419), and by FDOT's apparently unfulfilled commitment to "reevalaute wetlands affected by the Project … [to] determine if [such] wetlands … will be impacted ...." (Doc No. 45-39, AR0329.)  Neither the O'Dea Affidavit nor the Administrative Record discuss the

---

[8] See, e.g., See Highway J Citizens Group v. U.S. Dep't of Transp., 656 F. Supp. 2d 868 (E.D. Wis. 2009).
[9] Compare Doc. No. 45-18, AR0171) (Preliminary Engineering Report referencing Wetland Evaluation Report) with Doc. No. 45 (Index of Administrative Record, indicating absence of Wetland Evaluation Report).
[10] See Druid Hills Civic Assoc. v. Fed. Highway Admin., 772 F.2d 700, 718 (11th Cir. 1985).  O'Dea'

4

impacts of demucking or provide any evidence that the follow-up study promised in 2003 was ever conducted. Since the Administrative Record consists of "all documents and materials directly or indirectly considered by the agency,"[11] the omission of the foregoing materials can only be taken as evidence that Defendants failed to consider those impacts or undertake that follow-up study, precluding the hard look that NEPA requires.

FDOT also argues that Plaintiffs will not be harmed by the disturbance of contamination surrounding the Flyover. (St. Opp. Br. at 8.) The sole support for this claim is (again) the O'Dea Affidavit, which does not contain: (a) a single site investigation or remediation report, (b) the factual basis for reducing the number of "high" and "medium" risk sites from 10 in 2004, to 5 in 2012, to 1 by 2013, or (c) any sampling results to demonstrate the effectiveness of the alleged remediation "in the northwest quadrant of the Project intersection." (See O'Dea Aff. ¶ 11.) Nor is this information found anywhere in the Administrative Record. Instead, FDOT asks Plaintiffs, and the Court, to accept its unsupported assurances that all potential contamination problems have been resolved – a position contrary to the hard look and record evidence required of NEPA and the APA.

Finally, FDOT does not deny that the Flyover will bypass the corridor where Plaintiffs' business is located, impairing potential redevelopment and increasing the risk of blight. (See P.I. Br. at 9.) A regional "Master Plan" released in 2011 warned that "due to the [Flyover], future development of parcels located within this area could be negatively impacted," and called for a "detailed transportation planning study to … minimize [those] negative impacts …." (Id. at 10-11.) While Defendants touted the Flyover's consistency with prior land use

---

[11] Bar MK Ranches v. Yuetter, 994 F.2d 735, 739 (10th Cir. 1993).

plans in 2004, the Administrative Record does not contain one word on the new or amended plans that call attention to the Flyover's adverse impacts. This oversight violates both NEPA and FAHA, and imposes additional harm upon Plaintiffs – who work and own property in the precise area that local planning documents singled out for further review and protection.[12]

      B.      <u>Plaintiff's Claims are Timely and Cognizable Under NEPA and FAHA</u>

Unable to contest these facts, FDOT argues that: (a) increased risk of exposure to contaminants does not give rise to standing under NEPA, (b) adverse socio-economic and land use changes to the community where Plaintiffs own property and work are not cognizable harms under NEPA or FAHA, and (c) Plaintiffs' claims are untimely. All of these arguments fail as a matter of law.

In this Circuit, to establish standing under NEPA "a plaintiff must allege that the agency violated certain procedural rules, that these rules protect a plaintiff's concrete interests and that it is <u>reasonably probable</u> that the challenged action will threaten these concrete interests."[13] It is broadly recognized that "an injury of alleged <u>increased environmental risks</u> due to an agency's uninformed decision-making may be the foundation for injury in fact under Article III."[14] Federal Defendants admitted as much in their Motion to Dismiss the Amended Complaint. (Doc. No. 63 at 7-8.)

FDOT's argument that increased risk of injury cannot confer standing misinterprets <u>Metropolitan Edison Co. v. People Against Nuclear Energy</u>, a case reviewing the EIS for the

---

[12] <u>See</u> 23 U.S.C. § 128(a) (requiring consideration of "the goals and objectives of such urban planning as has been promulgated by the community"); <u>Yount v. Salazar</u>, 2013 WL 93372, at *13 (D. Ariz. Jan. 8, 2013).

[13] <u>Ouachita Watch League v. Jacobs</u>, 463 F.3d 1163, 1170 (11th Cir. 2006) (emphasis added).

[14] <u>Comm. to Save the Rio Hondo v. Lucero</u>, 102 F.3d 445, 449 (10th Cir. 1996) (emphasis added). <u>See also</u> <u>Sierra Club v. U.S. Army Corps of Eng'rs</u>, 446 F.3d 808, 816 (8th Cir. 2006); <u>Cit. for Better Forestry v. U.S. Dep't of Agric.</u>, 341 F.3d 961, 971 (9th Cir. 2003); <u>Klein v. U.S. Dep't of Energy</u>, 753 F.3d 576, 586 (6th Cir. 2014)

reopening of the Three Mile Island nuclear facility.[15] In that EIS, the lead agency considered the "risk of a nuclear accident," including exposure to contamination.[16] The Supreme Court held the plaintiffs' fear of such an accident and concomitant psychological harm was not a distinct environmental impact requiring consideration under NEPA, not, as FDOT suggests, that a party whose health is threatened by the release of contaminants must wait for such injury to occur before filing suit.[17] Indeed, FDOT's position would effectively bar NEPA claims until the damage that statute is designed to prevent had already occurred.

Next, FDOT misquotes Taubman Realty Group v. Mineta[18] for the position that "economic harm … is not cognizable under NEPA or FAHA." (St. Opp. Br. at 4.) The quote attributed to Taubman actually appears in Churchill Truck Lines v. United States, which is not a FAHA case.[19] More importantly, Churchhill involved harm to plaintiffs' "economic well-being vis-à-vis their competitors," not the community-wide socio-economic harms asserted by Plaintiffs here.[20] Taubman is also inapposite; it turned on whether a shopping center could "base its standing upon the rights and interests of patrons in traveling to and from a shopping mall," and did not address whether socio-economic injuries are cognizable under NEPA or FAHA.[21]

Since FAHA requires Defendants to consider "the economic, social, environmental or other effects of the … highway location or design," FDOT cannot credibly claim that socio-economic impacts fall outside that statute's zone of interests.[22] FDOT's argument that FAHA

---

[15] 460 U.S. 766 (1983).
[16] Id. at 775.
[17] See id. at 776-779.
[18] 198 F. Supp. 2d 744, 758 (E.D. Va. 2002)
[19] 533 F.2d 411, 416 (8th Cir.1976).
[20] Id.
[21] Taubman, 198 F. Supp. 2d at 758-760.
[22] 23 U.S.C. § 128(a) (emphasis added). See also 23 U.S.C. § 109(h).

7

does not apply to the Project is also incorrect; FAHA covers any "Federal-aid highway project involving the passing of, or going through, any city, town or village," including the construction of a new flyover at an existing intersection.[23] As set forth in Plaintiff's moving brief, land use and socio-economic impacts must also be considered under NEPA, particularly where, as here, Plaintiffs have asserted numerous other environmental impacts as well. (See P.I. Br. at 16.)[24]

Finally, FDOT argues that Plaintiffs' claims are barred by the APA's six-year statute of limitations since the Project was initially reviewed in 2004. Plaintiffs' claims, however, relate to changes in circumstances and conditions that occurred after 2004, including new land use plans, the abandonment of studies promised in the prior review, and traffic data that had grown stale over the course of a decade. Under FHWA guidance and NEPA case law, Defendants were required to consider these changes "in the affected environment" – and not merely changes to the Project itself – in their Reevalaution. (See Pl. Opp. To Motion to Dismiss at 23) (Doc. No. 71.) Since Plaintiffs could not have possibly pursued these claims prior to the March 2012 Reevaluation, they are well within the APA's six-year statute of limitations. (Id.)

### C. The Harm to Plaintiffs Outweighs the Costs Asserted by FDOT

According to FDOT, construction of the Flyover has already commenced, subjecting Plaintiffs to the very harms they filed suit to prevent. (See St. Opp. Br. at 9.) These injuries will only increase as construction proceeds, and in the absence of an injunction the Flyover may be substantially completed before Plaintiffs' claims are heard.

---

[23] 23 U.S.C. § 128(a); City of Davis v. Coleman, 521 F.2d 661 (9th Cir. 1975).
[24] FDOT's reliance on Breckinridge v. Rumsfeld 537 F.2d 864 (6th Cir. 1976) and Fed. for Am. Immigration Reform v. Meese, 643 F. Supp. 983 (S.D. Fl. 1986) is misplaced. Those cases involved the closure of a military base and implementation of an immigration policy that had no physical impact on that environment; this case involves physical construction activities that pose both environmental and socio-economic impacts. See Saint Paul Branch of NAACP v. U.S. Dep't of Transp., 764 F.Supp.2d 1092, 1112 (D. Minn. 2011) (requiring consideration of transit construction project on surrounding business community under NEPA).

In <u>Amoco Production v. Village of Gambell</u>, the Supreme Court stated that "[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages … If such injury is sufficiently likely, therefore, the balance of harms will usually favor the issuance of an injunction to protect the environment."[25] In <u>Amoco</u>, the Court found that the issuance of oil and gas leases was not likely to harm subsistence resources, in part because the Interior Secretary still had to review and approve a "development and production" plan that could protect those resources.[26] In contrast, here the demucking of wetlands, disturbance of suspected contamination, and bypassing of a vulnerable commercial corridor are already underway – a preliminary injunction is the sole remaining bulwark against irreparable harm.

FDOT overstates the alleged cost of the requested injunction, which O'Dea asserts will result in "project delay and modification costs" including $245,000 for site stabilization, $200,000 per month in contractual delay damages, the temporary layoff of four contract engineers, and the potential replacement of $1,300,000 traffic ramps. (O'Dea Aff. ¶¶ 4-9.) O'Dea does not provide any support for those figures, or say whether its construction contracts contain a force majeure clause that could reduce or avoid such costs.

More importantly, Plaintiffs' Motion does not seek to delay the Project or enjoin all construction. Under the requested injunction, at-grade construction activities that do not affect contaminated sites and wetlands could proceed while the Court considers Plaintiffs' challenge to the Flyover. (P.I. Br. at 22.) Plaintiffs have also not asked the Court to modify the Project, but rather to remand it to the agencies so it may be reviewed in compliance with NEPA and FAHA. (Am. Compl. Prayer for Relief.) On remand, if Defendants determine that an at-grade

---

[25] 480 U.S. 531, 545 (1987).
[26] <u>Id.</u> as 544-45.

9

alternative is preferable to the Flyover, the economic savings from such a design would vastly outweigh the delay and modification costs asserted by O'Dea. (<u>See</u> Birdoff Aff. ¶ 23) (estimated $11-13 million savings from replacement of Flyover with at-grade alternative.)[27]

FDOT asserts that an injunction would prolong construction-related disturbances to local businesses and traffic delays. (St. Opp. Br. at 9.) Even if this were the case, the construction impacts asserted by FDOT are temporary inconveniences, whereas the Flyover would permanently bypass many of those same businesses (including Plaintiffs') and impair the redevelopment of the surrounding area. Moreover, having waited a decade to begin construction of the Flyover that it previously intended to commence in 2025, FDOT cannot now claim that a brief injunction would significantly impair traffic conditions, particularly where reconsideration of the Flyover would serve the public's environmental and economic interest.

## **Conclusion**

Plaintiffs have no interest in a prolonged preliminary injunction. Since this case has already been extensively briefed and will be decided on the Administrative Record and other documents already before the Court, Plaintiffs are prepared to move for summary judgment within two weeks of the service of Defendants' answers, and will gladly consent to an expedited briefing schedule. A short-term preliminary injunction is needed, however, to preserve the status quo until the Court can reach the merits, and to prevent substantial completion of the Flyover that would preclude a meaningful reevaluation of that design should Plaintiffs prevail.

---

[27] For the same reasons, FDOT's demands for a security bond do not reflect the actual cost of an injunction. As set forth in their moving brief, Plaintiffs do not believe a bond should be required on these facts, but in the alternative request a conference concerning the security amount.

Dated:  April 29, 2014 

Respectfully submitted,

/s/Mark A. Chertok_____
MARK A. CHERTOK
*Admitted Pro Hac Vice*
Sive, Paget & Riesel, P.C.
460 Park Ave.,10th Floor
New York, NY 10022
Tel: (212) 421-2150
Fax: (212) 421-1891
mchertok@sprlaw.com

## Certificate of Service

     I hereby certify that on August 29, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which has caused a Notice of Electronic Filing to be sent to all counsel of record who are registered CM/ECF users in this case.

/s/Mark A. Chertok_____
MARK A. CHERTOK