**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

RB JAI ALAI, LLC, et al.,

      Plaintiffs,

v.                                     Case No:  6:13-cv-1167-Orl-40GJK

SECRETARY   OF   THE
FLORIDA DEPARTMENT OF
TRANSPORTATION, et al.,

      Defendants.

_____

## ORDER

This cause comes before the Court on the following:

1. Federal Defendants' Motion to Dismiss Second Amended Verified Complaint (Doc. 63), filed July 15, 2014;

2. State Defendants' Motion to Dismiss Plaintiffs' Second Amended Verified Complaint (Doc. 65), filed July 15, 2014;

3. Plaintiffs' Consolidated Opposition to Defendants' Motions to Dismiss (Doc. 71), filed July 29, 2014; and

4. Reply and Memorandum of Law in Support of State Defendants' Motion to Dismiss (Doc. 84), filed August 26, 2014.

Upon due consideration, the Court denies State Defendants' motion to dismiss and grants in part and denies in part Federal Defendants' motion to dismiss.

## I.    BACKGROUND

### A.    Factual Background[1]

This lawsuit challenges the approval and funding of an elevated highway overpass project in Seminole County, Florida.   In the early 2000s, the Florida Department of Transportation ("FDOT") conducted studies of the U.S. 17-92 and S.R. 436 intersection. (Doc. 57, ¶ 56).   These studies resulted in the S.R. 15/600 (U.S. 17-92) Interchange Project Development and Environmental Study (the "PD&E"), which recommended certain improvements to the intersection to alleviate anticipated traffic concerns (the "Project").   (*Id.* ¶ 56; Docs. 1-1–1-3).   Included in the proposed improvements is a long, single-span overpass along U.S. 17-92 crossing S.R. 436 (the "Flyover").   (Doc. 57, ¶ 57). The PD&E was published on February 4, 2004 and has not been modified since.   (*Id.* ¶ 58).

The FDOT sought federal funding for the Flyover from the Federal Highway Administration ("FHWA"), triggering review of the Project under the National Environmental Policy Act, 42 U.S.C. §§ 4321–4370h ("NEPA").   (*Id.* ¶ 59).   However, the FDOT and FHWA declared the Project a Type 2 categorical exclusion under NEPA, thus dispensing with the statutory requirement that the agencies conduct either an environmental assessment or an environmental impact statement.   (*Id.* ¶ 60).   In March 2012, the FDOT and FHWA re-evaluated the Project's status as a Type 2 categorical

---

1.  This account of the facts is taken from Plaintiffs' Second Amended Verified Complaint (Doc. 57), the allegations of which the Court must accept as true to the extent Defendants' move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

exclusion due to certain design changes (the "2012 Re-evaluation").  (*Id.* ¶ 86).  The agencies ultimately re-approved the Project's status as a Type 2 categorical exclusion. (*Id.*).

Plaintiffs now challenge the procedure that the agencies employed to re-approve the Project's classification as a Type 2 categorical exclusion under NEPA in March 2012.[2] Specifically, Plaintiffs allege that the FDOT and FHWA disregarded numerous studies, reports, and other updated information regarding the environmental impacts of the Project in re-approving the Project's status.  (*Id.* ¶¶ 68–106).  Plaintiffs state that because the environmental impacts of the Project had changed so significantly from the Project's initial approval in 2004, a Type 2 categorical exclusion was no longer appropriate in 2012.  (*See id.*).  As a result, Plaintiffs claim that the agencies' decision to maintain the Project as a Type 2 categorical exclusion was arbitrary, capricious, and not supported by substantial evidence in the administrative record.  (*Id.* ¶¶ 116, 125, 141).

**B.    Procedural History**

Plaintiff, RB Jai Alai, LLC ("Jai Alai"), filed the initial complaint in this matter on August 1, 2013.  (Doc. 1).  On September 11, 2013, Jai Alai amended its complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B).  (Doc. 19).  On June 17, 2014, this Court dismissed Jai Alai's Amended Complaint and allowed Jai Alai to submit a second amended complaint within fourteen days.  (Doc. 56).

On July 1, 2014, Plaintiffs filed their Second Amended Verified Complaint, which

---

2.  The Second Amended Verified Complaint also hints at challenging the 2004 determination of the Project as a Type 2 categorical exclusion.  (*See, e.g.*, Doc. 57, ¶¶ 4, 60–67; *id.* at p. 27).  As discussed in Section IV.B, *infra*, any such challenge is barred by the statute of limitations.

remains the operative complaint in this action.  (Doc. 57).  In addition to addressing the various deficiencies of Jai Alai's first amended complaint, the Second Amended Verified Complaint adds Richard Birdoff ("Birdoff") and David P. Catina ("Catina") as party-plaintiffs.  Plaintiffs' Second Amended Verified Complaint alleges three claims for relief against Defendants.[3]   First, Plaintiffs allege that Defendants failed to consider the Project's environmental impact in violation of NEPA.  (*See id.* ¶¶ 107–16).  Second, Plaintiffs allege that Defendants failed to consider new information and changed circumstances in re-approving the Project's status as a Type 2 categorical exclusion, again in violation of NEPA.  (*See id.* ¶¶ 117–25).  Third, Plaintiffs allege that Defendants acquired federal approval and funding for the Project in violation of the Federal-Aid Highway Act, 23 U.S.C. §§ 101–170 ("FAHA").[4]  (*See id.* ¶¶ 126–41).  Plaintiffs demand that this Court (1) declare that Defendants violated NEPA, (2) declare that Defendants violated FAHA, (3) vacate the 2004 categorical exclusion and 2012 re-evaluation, (4) declare the Project's existing design contract void, (5) enjoin funding and construction of the Project until Defendants comply with NEPA and FAHA, (6) remand the matter to the FDOT and FHWA for further consideration, and (7) award costs and fees to Plaintiffs. (*Id.* at p. 27).

On July 15, 2014, Federal Defendants filed their Motion to Dismiss Second

---

3.  Plaintiffs allege their claims against two subsets of defendants.  Plaintiffs sue state actors FDOT and Ananth Prasad in his official capacity as Secretary of the FDOT (collectively, "State Defendants") and federal actors FHWA and David Hawk in his official capacity as Florida Division Administrator of the FHWA (collectively, "Federal Defendants").  (Doc. 57).

4.  Since neither NEPA nor FAHA provide private rights of action, *see, e.g.*, *Native Ecosystems Council v. U.S. Forest Serv.*, 428 F.3d 1233, 1238 (9th Cir. 2005), Plaintiffs bring their claims through the Administrative Procedure Act ("APA"), which allows judicial review of any agency action that results in injury.  5 U.S.C. § 702.

Amended Verified Complaint.  (Doc. 63).  Federal Defendants contend that Plaintiffs lack standing to bring the claims asserted in the Second Amended Verified Complaint because Plaintiffs have not suffered a cognizable injury under either NEPA or FAHA.  (*Id.* at pp. 7–11).  Federal Defendants further argue that even if Plaintiffs have suffered a cognizable injury under these statutes, Plaintiffs still lack standing because Plaintiffs are not within the intended "zones of interests" protected by NEPA or FAHA.  (*Id.* at pp. 12–13).  Federal Defendants also attack the Second Amended Verified Complaint on the grounds that it is a "shotgun" pleading to which it is impossible for Federal Defendants to formulate a response.  (*Id.* at pp. 14–15).

Also on July 15, 2014, State Defendants filed their Motion to Dismiss Second Amended Verified Complaint.  (Doc. 65).  State Defendants assert the same challenges to Plaintiffs' standing as Federal Defendants.  (*Id.* at pp. 8–14).  State Defendants additionally argue that Plaintiffs have failed to state claims for which relief can be granted under either NEPA or FAHA, (*id.* at pp. 15–22), and contend that Plaintiffs are barred by the statute of limitations from claiming relief based on any actions taken by Defendants in 2004, (*id.* at p. 22).[5]

## II.   ISSUES PRESENTED

Based on the arguments contained within both motions to dismiss, the Court finds itself confronted with the following issues:

1.    Whether Plaintiffs have standing to bring the claims alleged by their Second

---

5. State Defendants also challenge Plaintiffs' demands for attorney's fees, costs, and invalidation of a certain contract between the FDOT and a private contractor regarding the Project's design and construction.  (Doc. 65, pp. 22–23).  However, because this matter has not yet reached the judgment phase of the proceedings, the Court need not address the sufficiency or insufficiency of the relief requested.

Amended Verified Complaint;

2.   Whether any of Plaintiffs' claims are barred by an applicable statute of limitations;

3.   Whether Plaintiffs state claims for which relief can be granted under NEPA and FAHA; and

4.   Whether Plaintiffs' Second Amended Verified Complaint constitutes a "shotgun" pleading that requires dismissal.

## III.   STANDARDS OF REVIEW

### A.   Challenges to Subject Matter Jurisdiction

Motions made pursuant to rule 12(b)(1) attack a district court's subject matter jurisdiction to consider the case at bar.  Motions to dismiss under rule 12(b)(1) come in two forms: "facial attacks" and "factual attacks."  *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990).  Facial attacks only require the court to determine if the plaintiff has alleged a sufficient basis for subject matter jurisdiction.  *Id.* at 1529.  As such, the allegations within the complaint are assumed true for the purpose of the motion.  *Id.*  On the other hand, factual attacks challenge the existence of subject matter jurisdiction irrespective of what the complaint alleges.  *Garcia v. Copenhaver, Bell & Assocs., M.D's, P.A.*, 104 F.3d 1256, 1260–61 (11th Cir. 1997).  Accordingly, in a factual attack, courts may consider information outside of the pleadings—including testimony, affidavits, and other evidence—and "may make factual findings necessary to resolve the motion."  *Hawthorne v. Baptist Hosp., Inc.*, No. 3:08cv154/MCR/MD, 2008 WL 5076991, at *2 (N.D. Fla. Nov. 24, 2008).

Standing to bring and maintain a lawsuit is fundamental to invoking a federal

court's subject matter jurisdiction.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340–42 (2006).  Similarly, district courts lack subject matter jurisdiction over claims that are barred by an applicable statute of limitations.  *See Aftergood v. C.I.A.*, 225 F. Supp. 2d 27, 29 (D.D.C. 2002).  Challenges to a party's standing and attacks based on a claim's statute of limitations are both factual attacks on the district court's subject matter jurisdiction that require the court to look beyond the four corners of the complaint.  *See Garcia*, 104 F.3d at 1260–61.

### B.    Failure to State a Claim

Motions made pursuant to rule 12(b)(6) challenge whether the plaintiff has made sufficient factual allegations to state a claim upon which relief can be granted.  In order to survive a rule 12(b)(6) motion to dismiss, the complaint must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  District courts must accept all well-pleaded allegations within the complaint as true.  *Id.* at 555.  An allegation is well-pleaded when the plaintiff alleges sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Mere legal conclusions or recitation of the elements of a claim are not enough.  *Twombly*, 550 U.S. at 555.  Courts must view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor.  *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994).

In a similar vein, a complaint also fails to state a claim upon which relief can be granted where the complaint fails to conform to Federal Rules of Civil Procedure 8 and 10.  Specifically, rule 8 requires every complaint to contain a short and plain statement of the

grounds for the court's jurisdiction, a short and plain statement of the claims showing that the plaintiff is entitled to relief, and a demand for the relief sought. Fed. R. Civ. P. 8(a). Rule 10 further requires all plaintiffs to state their claims "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b); *see also* M.D. Fla. R. 1.05, 1.06 (providing specific local standards for pleading). Failure to adhere to these pleading standards renders a complaint incapable of response and requires its dismissal or a more definite statement by the plaintiff. *See Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996).

## IV.   DISCUSSION

District courts must address jurisdictional challenges before reaching the sufficiency of a complaint. *See Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1242 (11th Cir. 1998). Accordingly, the Court must analyze Defendants' respective motions to dismiss first under Rule 12(b)(1), then under Rule 12(b)(6).

### A.   Plaintiffs Have Standing to Bring the Instant Lawsuit

Resolving the issue of standing in the instant case requires analysis under both Article III of the United States Constitution and the judicially-created doctrine of prudential standing. *Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1170 (11th Cir. 2006). Lack of either constitutional standing or prudential standing proves fatal to a plaintiff asserting his clams. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The Court addresses these distinct standing principles in turn.

### 1.   Article III Standing

"[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases

or controversies." *DaimlerChrysler*, 547 U.S. at 341 (internal quotation marks omitted). A litigant's standing to invoke the authority of a federal court "is an essential and unchanging part of [this] case-or-controversy requirement." *Lujan*, 504 U.S. at 560. As such, the elements of constitutional standing are well-established.

First, a plaintiff must show that he has suffered an "injury-in-fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) (internal quotation marks omitted). This first element is relaxed when a plaintiff, as in the instant case, alleges a procedural violation;[6] a plaintiff will only need to demonstrate that there is "an increased risk of harm" to his concrete interests, not that his injury is "actual or imminent." *Lujan*, 504 U.S. at 572 n.7. In the context of challenges made under environmental statutes, the concrete and particularized interest element also consists of showing that a plaintiff uses the area affected by the agency's decision causing the alleged environmental damage. *Id.* at 565. Second, a plaintiff's injury must be "fairly traceable to the challenged action of the defendant." *Friends of the Earth*, 528 U.S. at 180. Finally, a plaintiff must demonstrate that "it is likely, as opposed to merely speculative, that the injury will be redressed" by a decision in his favor. *Id.* at 181. Although it is the plaintiff's burden to establish these standing elements, "general factual allegations of injury resulting from the defendant's conduct" are sufficient to survive a motion to dismiss. *Lujan*, 504 U.S. at 561.

---

6. Here, Plaintiffs allege that Defendants improperly failed to consider new and updated information in re-approving the Project as a Type 2 categorical exclusion, thus avoiding the procedural requirement that an environmental impact study or environmental assessment be taken. (Doc. 57, ¶¶ 68–106).

Defendants challenge Plaintiffs' constitutional standing to bring their claims under NEPA and FAHA for two reasons.   First, Defendants argue that Plaintiffs have not suffered an increased risk of injury that is concrete and particularized.  (*See* Doc. 63, pp. 7–11; Doc. 65, pp. 8–10).   Defendants emphasize that Plaintiffs' alleged injuries consist of "unspecified, speculative harms" and "[b]lanket speculation."  (Doc. 65, p. 9; *see also* Doc. 63, pp. 9–10).   Second, State Defendants contend that even if Plaintiffs have suffered a proper injury-in-fact, Plaintiffs fail to demonstrate a causal connection between their alleged injuries and Defendants' actions.[7]  (Doc. 65, pp. 10–12).   State Defendants stress that Plaintiffs' theory of causation relies heavily on "lengthy chains of conjecture" that fail to specify the exact nature of how Defendants caused Plaintiffs' injuries.  (*Id.* at p. 12).

Plaintiffs allege in their Second Amended Verified Complaint that the Project and construction of the Flyover places their interests in Jai Alai, the environment, public health and safety, and quality of life at increased risk of harm.  Specifically, Plaintiffs allege that the Project will cause greater traffic and congestion surrounding Jai Alai, thus increasing risks of injury to pedestrians and vehicles while decreasing walkability in the area.  (Doc. 57, ¶¶ 17–18).   Plaintiffs allege that the new traffic flows created by the Project will decrease customer access to Jai Alai and, therefore, will result in negative economic impacts to Jai Alai, Birdoff, and Catina.  (*Id.* ¶¶ 14–15).   Plaintiffs further allege that construction of the Flyover will cause the release of contaminants into the environment and increase air and noise pollution around Jai Alai.  (*Id.* ¶¶ 16, 18).  As a result, Birdoff

---

7.  Federal Defendants do not raise the issue of causation in their motion to dismiss.  (*See* Doc. 63).

and Catina—as employees of Jai Alai—face increased health and safety risks from pollution and traffic. (*Id.* ¶¶ 21–27). Moreover, Plaintiffs' alleged injuries are geographically tied to Jai Alai's business site; all risks of injury to the environment derive from the Project's impact on the area surrounding Jai Alai. *See Lujan*, 504 U.S. at 565 (requiring that a plaintiff use the area affected by a challenged activity). Defendants contend that these risks of injury are merely conjectural and that Plaintiffs fail to provide sufficient evidence for this Court to conclude that these injuries are real. (Doc. 63, pp. 7–11; Doc. 65, pp. 8–10). However, general factual allegations are sufficient at this stage of the proceedings. *Lujan*, 504 U.S. at 561. As such, Plaintiffs' increased risks of injury are concrete and particularized at this time and the Court finds that Plaintiffs have alleged sufficient injuries-in-fact caused by Defendants' actions.

## 2.    Prudential Standing

Although a plaintiff may properly demonstrate constitutional standing under Article III, he may nevertheless lack standing to assert his claims under the judiciary's self-created prudential standing requirements. *Id.* at 560. The purpose of prudential standing is to ensure that the plaintiff is the type of plaintiff for which the contested statute or constitutional right envisions protection. *See Ouachita Watch League*, 463 F.3d at 1173. Therefore, the question of whether it is prudent to allow a plaintiff to litigate a claim revolves around "whether the interest sought to be protected by the [plaintiff] is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970).

Whether a plaintiff falls within a statute's "zone of interests" is determined using

"traditional tools of statutory interpretation." *Lexmark Int'l., Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 (2014). Intuitively, the first step in determining the meaning of a statute is to look at the statute's text. *United States v. Silva*, 443 F.3d 795, 797–98 (11th Cir. 2006) (per curiam). "If the statute's meaning is plain and unambiguous, there is no need for further inquiry." *United States v. Fisher*, 289 F.3d 1329, 1337–38 (11th Cir. 2002). Additionally, courts must "not look at one word or term in isolation, but instead . . . look to the entire statutory context." *United States v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir. 1999). Finally, courts "should not interpret a statute in a manner inconsistent with the plain language of the statute, unless doing so would lead to an absurd result." *Silva*, 443 F.3d at 789.

Overall, the "zone of interests" test is permissive in nature and should be construed in favor of allowing judicial review of administrative action. *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987). However, this presumption in favor of judicial review may be overcome by the express terms of the statute or where Congress's intent to prevent judicial review is "fairly discernable in the statutory scheme" at issue. *Id.* (quoting *Data Processing*, 397 U.S. at 157) (internal quotation marks omitted).

## a.    Plaintiffs Fall Within NEPA's Zone of Interests

There is no doubt that NEPA's primary purpose is environmental protection. 42 U.S.C. § 4321 (declaring Congress's purpose in enacting NEPA to include "encourag[ing] productive and enjoyable harmony between man and his environment" and "promot[ing] efforts which will prevent or eliminate damage to the environment"); 40 C.F.R. § 1500.1(c) (illuminating that NEPA is intended to help public officials "take actions that protect, restore, and enhance the environment"). However, NEPA also

identifies other interests that are to be advanced through the lens of environmental protection, including ensuring "safe, healthful, productive, and esthetically and culturally pleasing surroundings," "attain[ing] the widest range of beneficial uses of the environment without degradation, risk to health and safety, or other undesirable and unintended consequences," and "achiev[ing] a balance between population and resource use which will permit high standards of living and a wide sharing of life's amenities." 42 U.S.C. § 4331(b). NEPA additionally intends to advance the "human environment," which consists expansively of "the natural and physical environment and the relationship of people with that environment." 40 C.F.R. § 1508.14. *See also Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 807–09 (11th Cir. 1993) (recognizing an economic component to NEPA). Accordingly, NEPA's zone of interests can be said to include the environment, quality of life, land use and resource management, economic growth, and public health and safety.

Defendants argue that Plaintiffs do not fall within NEPA's zone of interests because Plaintiffs allege purely economic injuries. (*See* Doc. 63, pp. 12–13; Doc. 65, pp. 12–14). There is certainly disagreement among the circuits as to whether NEPA affords protection to purely economic interests—*i.e.*, whether a plaintiff can claim a violation of NEPA despite suffering no environmental injury.[8] While the Eleventh Circuit has not squarely

---

8. *Compare Rosebud Sioux Tribe v. McDivitt*, 286 F.3d 1031, 1038 (8th Cir. 2002) (holding that purely economic interests may fall within NEPA's zone of interests if the provision at issue "evinces a concern for economic considerations") *with Ashley Creek Phosphate Co. v. Norton*, 420 F.3d 934, 940 (9th Cir. 2005) ("[W]e have consistently held that purely economic interests do not fall within NEPA's zone of interests . . . .") *and Town of Stratford, Conn. v. Fed. Aviation Admin.*, 285 F.3d 84, 89 (D.C. Cir. 2002) (finding that petitioner lacked prudential standing to bring NEPA claim because it failed to "connect[] its claimed economic injury to any environmental effects" caused by respondent's alleged violation).

addressed the issue,[9] this Court finds guidance in *Ouachita Watch League v. Jacobs*, 463 F.3d 1163 (11th Cir. 2006). Although the Eleventh Circuit was not presented with claims involving purely economic interests, this Court can glean from *Ouachita Watch League* that a plaintiff must demonstrate three elements to fall within NEPA's zone of interests: (1) the defendant's failure to comply with NEPA "adversely affected the environment," (2) the defendant's failure to comply with NEPA caused plaintiff's injury, and (3) "the injury alleged is environmental." *Id.* at 1173. Combined with the overarching environmental purpose of NEPA, this Court sides with those courts concluding that purely economic injuries with no connection to the environment are insufficient to fall within NEPA's zone of interests.

In the instant case, Plaintiffs allege numerous injuries they risk suffering should the Project and the Flyover's construction proceed. First, Plaintiffs allege economic injuries to their respective interests in Jai Alai, consisting of decreased business due to impeded customer access to Jai Alai caused by the Project. (Doc. 57, ¶¶ 14–28). Next, Plaintiffs allege quality of life injuries: decreased aesthetic value of the area, increased traffic and congestion, increased noise and air pollution, blight and urban sprawl, and negative impacts to community character. (*Id.*). Plaintiffs further allege public health and safety injuries: release of contaminants into the environment and threats to pedestrian and vehicle safety. (*Id.*). Finally, Plaintiffs allege environmental injuries: release of contaminants into the environment and increased noise and air pollution. (*Id.*). In support

---

9. The Eleventh Circuit has recognized economic injuries as cognizable injuries under NEPA when combined with environmental injuries, *see, e.g.*, *Region 8*, 993 F.2d at 807–09, but—based on the parties' briefs and this Court's own research—the appellate court has not yet been presented with the issue of purely economic injuries.

of their injuries, Plaintiffs cite to numerous reports and studies they claim were ignored or not considered by Defendants in the 2012 Re-evaluation.  (*See id.* ¶¶ 69, 73, 84, 98, 102–06).

Despite Defendants' assertions to the contrary, Plaintiffs' have alleged more than purely economic injuries.  Moreover, the Court finds that Plaintiffs' interests in their workplace environment, their individual health and safety, and their respective business or employment interests in Jai Alai all fall within NEPA's zone of interests.  Therefore, Plaintiffs have alleged sufficient factual allegations at this stage of the proceedings to survive Defendants' challenges to standing.  *See Lujan*, 504 U.S. at 561.

### b.    Plaintiffs Fall Within FAHA's Zone of Interests

FAHA provides that its general purpose is "to preserve and enhance the surface transportation system to meet the needs of the United States for the 21st Century." 23 U.S.C § 101(b)(3)(A).  Included within this general purpose is the policy that America's surface transportation system should "provide for a strong and vigorous national economy" that is "safe, efficient, and reliable."  *Id.* § 101(b)(3)(D).  In passing FAHA, Congress also declared that "the connection between land use and infrastructure is significant," *id.* § 101(b)(3)(F), and that "transportation should play a significant role in promoting economic growth, improving the environment, and sustaining the quality of life," *id.* § 101(b)(3)(G).  Therefore, FAHA's zone of interests can be said to include transportation, economic growth, environmental protection, land use, and quality of life.

State Defendants contend that Plaintiffs do not fall within FAHA's zone of interests because the only interest Plaintiffs assert is economic in nature—*i.e.*, damage to Jai Alai's

business operations.[10]   (Doc. 65, p. 14).   State Defendants incorporate their discussion of NEPA's zone of interests in concluding that purely economic interests are insufficient to invoke the protection of FAHA.  (*See id.*).

However, for similar reasons discussed in Section IV.A.2.a, *supra*, Plaintiffs allege more than purely economic injuries.  In addition to alleging negative economic impacts to Jai Alai's business, (Doc. 57, ¶¶ 13–15), Jai Alai also claims that the Flyover will increase noise, air pollution, and traffic congestion in the area and will negatively impact safety to both pedestrians and vehicles attempting to access Jai Alai's site, (*id.* ¶¶ 16–18).  As an employee of Jai Alai, Birdoff alleges that the Flyover will negatively impact the air quality of his place of employment and his safety both as a driver and a pedestrian who uses the area's roadways and sidewalks.  (*Id.* ¶¶ 19–22, 27).   Catina, another of Jai Alai's employees, makes the same allegations.  (*See id.* ¶¶ 23–27).   The Court finds that Plaintiffs' interests in their workplace environment and safety while utilizing the roads and sidewalks involved in the Project fall within FAHA's zone of interests of protecting transportation, public safety, quality of life, and the environment.  *See* 23 U.S.C. § 101(b). Accordingly, Plaintiffs have alleged sufficient factual allegations at this stage of the proceedings to survive State Defendants' challenge to standing.  *See Lujan*, 504 U.S. at 561.

### B.   Plaintiffs' Demand to Vacate the 2004 Determination of Categorical Exclusion is Barred by the Statute of Limitations

The issue of when, or if, a claim is time-barred under either NEPA or FAHA appears to be a matter of first impression in both this Court and the Eleventh Circuit.  As

---

10.  Federal Defendants do not appear to dispute that Plaintiffs fall within FAHA's zone of interests.  (See Doc. 63).

this Court noted previously, neither NEPA nor FAHA creates a private right of action; any dispute under these statutes must be brought through the APA.  *See, e.g.*, *Native Ecosystems Council*, 428 F.3d at 1238.  Consequently, a number of courts apply the APA's six-year statute of limitations, 28 U.S.C. § 2401(a), to actions brought under these statutory schemes.  *See, e.g.*, *Friends of Tims Ford v. Tenn. Valley Auth.*, 585 F.3d 955, 964 (6th Cir. 2009); *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 186 (4th Cir. 1999).  Other courts, however, have determined that the noticeable lack of a statute of limitations within NEPA implies that Congress never intended such a time-bar.  *See, e.g.*, *Park Cnty. Res. Council, Inc. v. U.S. Dep't of Agric.*, 817 F.2d 609, 617 (10th Cir. 1987) (finding that an imputation of a statute of limitations in NEPA actions "would be no more than a blind application of a statute of limitations in a context in which its application was not envisioned [by Congress] and would result in illogical and capricious administration of an important environmental statute"), *overruled on other grounds by Vill. of Los Ranchos de Albuquerque v. Marsh*, 956 F.2d 970, 973 (10th Cir. 1992).

This Court finds the most direction in Eleventh Circuit decisions analyzing other federal statutes that lack an explicit statute of limitations.  In *U.S. Steel Corp. v. Astrue*, 495 F.3d 1272 (11th Cir. 2007), the Eleventh Circuit addressed the issue of whether an action under the Coal Act was time-barred.  The appellate court held that, although the Coal Act lacked any statute of limitations provision, the fact that the cause of action must be brought through the APA meant that the APA's six-year statute of limitations applied.  *Id.* at 1280.  *See also Ctr. for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006) ("The [Endangered Species] Act prescribes no statute of limitations, so the

general six-year statute of limitations for suits against the United States applies."). Accordingly, this Court applies the APA's six-year statute of limitations to the instant action, meaning that any final agency action subject to this Court's review must have occurred on or after August 1, 2007.[11]

A cause of action accrues and the statute of limitations begins to run under the APA at the time of a "final agency action." *Friends of Tims Ford*, 585 F.3d at 964. A final agency action is one that is the agency's definitive position, affects the parties' legal rights or obligations, and immediately impacts the regulated parties' daily operations. *See Tenn. Valley Auth. v. Whitman*, 336 F.3d 1236, 1248 (11th Cir. 2003). Both the initial 2004 categorical exclusion and the 2012 Re-evaluation satisfy these elements of finality, as both constitute Defendants' definitive positions on the Project's status as a Type 2 categorical exclusion, affect the parties' legal rights and obligations, and immediately impact Plaintiffs' daily operations.

Although Plaintiffs' Second Amended Verified Complaint at least implies claims for relief based on the 2004 determination of categorical exclusion, (*see, e.g.*, Doc. 57, ¶¶ 4, 60–67; *id.* at p. 27 (requesting that the Court vacate the 2004 categorical exclusion)), Plaintiffs appear to retreat from this position in their consolidated response, (*see* Doc. 71, pp. 22) ("Plaintiffs' claims . . . do not arise from the categorical exclusion, but instead from Defendants' 2012 Reevaluation . . . ."). Nevertheless, for the sake of clarity and to ensure that time-barred issues are not raised in the instant case, the Court applies the APA's six-year statute of limitations to prohibit vacatur of the 2004 categorical exclusion. Instead,

---

11.   Plaintiff's Second Amended Verified Complaint relates back to the filing of the initial complaint on August 1, 2013. (*See* Doc. 1).

Plaintiffs' relief is limited to any relief to which they might be entitled arising from the 2012 Re-evaluation.

### C.    Plaintiffs State Claims for Which Relief Can Be Granted

Having ensured that this Court has subject matter jurisdiction over the claims alleged by Plaintiffs' in their Second Amended Verified Complaint, the Court now analyzes whether Plaintiffs have stated claims for which relief can be granted under NEPA and FAHA.  *See Llampallas*, 163 F.3d at 1242.

Neither NEPA nor FAHA provide private rights of action; any claims for relief under either statute must be brought through the APA.  *See, e.g.*, *Native Ecosystems Council*, 428 F.3d at 1238.  Pursuant to the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  Therefore, in order to survive a motion to dismiss for failure to state a claim upon which relief can be granted, Plaintiffs must plead sufficient factual allegations showing that they have either suffered a legal wrong or are adversely affected or aggrieved within the meanings of NEPA and FAHA.  *Iqbal*, 556 U.S. at 678.

State Defendants' arguments rely heavily on persuading the Court to make factual findings that are more appropriate on motion for summary judgment.[12]  (*See* Doc. 65, pp. 15–22).  However, after reviewing Plaintiffs' Second Amended Verified Complaint, it is clear that Plaintiffs have alleged sufficient factual allegations showing that they have been adversely affected or aggrieved by State Defendants' 2012 Re-evaluation of the

---

12.  The Court notes that Federal Defendants do not raise the question of whether Plaintiffs have stated claims upon which relief can be granted.  (*See* Doc. 63).

Project's classification as a Type 2 categorical exclusion.  (See Doc. 57, ¶¶ 10–28, 56–106).  Moreover, the Court re-incorporates its discussion of constitutional and prudential standing in Section IV.A, *supra*, in finding that Plaintiffs have alleged sufficient factual allegations that they have been aggrieved within the meaning of NEPA and FAHA.  Plaintiffs' Second Amended Verified Complaint therefore survives State Defendants' motion to dismiss.

Additionally, the Court finds Federal Defendants' claim that Plaintiffs' Second Amended Verified Complaint constitutes a "shotgun" pleading unpersuasive.  A "shotgun" pleading results when it is impossible for a defendant to know which factual allegations of the complaint are meant to support which claims for relief.  *Anderson*, 77 F.3d at 366.  For example, in *Anderson v. District Board of Trustees of Central Florida Community College*, Anderson pleaded his complaint in such a manner as to re-incorporate all preceding paragraphs for each of six counts.  *Id.* at 365–66.  Consequently, Anderson re-alleged numerous irrelevant factual allegations that were not intended to support every count.  *Id.* at 366.  Anderson's complaint ultimately resulted in a pleading that was impossible to defend against.  *Id.*

Here, although Plaintiffs' Second Amended Verified Complaint re-incorporates and re-alleges all preceding paragraphs within every count, it cannot be said that Federal Defendants are incapable of responding.  Each count alleges similar violations resulting from the same factual circumstances.  Moreover, the Court finds that the Second Amended Verified Complaint complies with Federal Rules of Civil Procedure 8 and 10 by providing short and plain statements of the grounds for the court's jurisdiction, short and plain statements of the claims showing that Plaintiffs are entitled to relief, and Plaintiffs'

demands for relief.  Although Plaintiffs' pleading technique might be redundant, Federal Defendants are able to discern Plaintiffs' allegations and should be able to properly defend themselves.  The fact that State Defendants do not mention that they are unable to properly defend against the Second Amended Verified Complaint lends further support to the Court's finding.  (*See* Docs. 65, 84).

## V.    CONCLUSION

The Court concludes that Plaintiffs have standing to bring the instant lawsuit. Plaintiffs sufficiently allege that they have suffered increased risk of injury to their concreate interests and that these interests fall within the zones of interests protected by NEPA and FAHA.  Further, Plaintiffs have alleged sufficient factual allegations to state claims for relief under NEPA and FAHA upon which relief can be granted.  Finally, although any claims for relief based on the initial 2004 determination of categorical exclusion are barred by the statute of limitations, Plaintiffs' remaining claims accruing from the 2012 Re-evaluation are timely.

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Federal Defendants' Motion to Dismiss Second Amended Verified Complaint (Doc. 63) is **DENIED**.

2. State Defendants' Motion to Dismiss Plaintiffs' Second Amended Verified Complaint (Doc. 65) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. State Defendants' motion to dismiss is **GRANTED** to the extent that any claims for relief arising under Defendants' 2004 classification of the Project as a Type 2 categorical exclusion are barred by the

statute of limitations.

    b.  State Defendants' motion to dismiss is **DENIED** in all remaining respects.

3.  Federal Defendants and State Defendants shall file their respective answers to Plaintiffs' Second Amended Verified Complaint within **fourteen (14) days** of this Order.

**DONE AND ORDERED** in Orlando, Florida on September 19, 2014.

_____
PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record